# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **CINDY SNOW,** <br><br> *Plaintiff,* <br><br> v. <br><br> **EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMAITON SERVICES, LLC,** *and* **SUNCOAST CREDIT UNION,** <br><br> *Defendants.* | Case No.: _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **CINDY SNOW** ("**Ms. Snow**" or "**Plaintiff**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **EXPERIAN INFORMATION SOLUTIONS, INC.** ("**Experian**"), **EQUIFAX INFORMATION SERVICES, LLC** ("**Equifax**"), and **SUNCOAST CREDIT UNION** ("**Suncoast**"), (collectively, the "Defendants"), stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action brought by Ms. Snow against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction arises under 28 U.S.C. § 1331, as the FCRA is a federal statute.

3.     Defendants are subject to the provisions of the FCRA and are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

5.     **Ms. Snow** is a natural person residing in the City of Riverview, Hillsborough County, Florida.

6.     Ms. Snow is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.     **Experian** is an Ohio corporation with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

8.     Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 32301**.

9.     **Equifax** is a Georgia limited liability company with a principal business address of 1550 Peachtree Street, NW, Atlanta, GA 30309.

10. Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

11. Experian and Equifax are each "consumer reporting agencies" ("CRAs") within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

12. **Suncoast** is a Florida credit union with a principal business address of **6801 East Hillsborough Ave., Tampa, FL 33610**.

13. Suncoast is a furnisher of information to multiple CRAs, as that phrase is used within 15 U.S.C. § 1681, in that it regularly reports account payments and status data on both consumer and commercial credit lines.

## FACTUAL ALLEGATIONS

14. On or around November 29, 2021 Ms. Snow obtained a mortgage from Suncoast.

15. Shortly afterward, Suncoast started reporting tradeline data concerning the mortgage to the major CRAs, including Experian and Equifax

16. In October 2024, Ms. Snow filed a petition for relief under Chapter 7 of the United States Bankruptcy Code in the Middle District of Florida.

17. On November 26, 2024, a Reaffirmation Agreement was filed regarding Ms. Snow's mortgage account with Suncoast.



Case 8:24-bk-06123-RCT    Doc 9    Filed 11/26/24    Page 3 of 9

B2400A (Form 2400A) (12/15)

☐ Presumption of Undue Hardship
☑ No Presumption of Undue Hardship
See Debtor's Statement in Support of Reaffirmation,
Part II below, to determine which box to check

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

IN RE

CHAPTER: 7
CASE NO: 8:24-BK-06123-RCT

CINDY LYNNE SNOW
DEBTOR

REAFFIRMATION DOCUMENTS
Name of Creditor:  Suncoast Credit Union
THIS IS A CREDIT UNION

REAFFIRMATION AGREEMENT

Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation
Agreement, you must review the important disclosures, instructions and definitions found
in Part V of this Reaffirmation Documents packet.

A.  Brief description of the original agreement being reaffirmed:  MORTGAGE

B.  AMOUNT REAFFIRMED:          $ 167,550.21

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This
may include unpaid principal, interest and fees and costs (if any) arising on or
before the date you sign this Reaffirmation Agreement.

See the definition of "Amount Reaffirmed" in Part V. C below.

18.    As of November 2024, Ms. Snow's mortgage with Suncoast had been reaffirmed by her, meaning that she did not seek discharge of the debt and agreed to continue making payments as scheduled.

19.    In January 2025, Ms. Snow received a discharge of her unsecured debts from the United States Bankruptcy Court, Middle District of Florida, Tampa Division.

20.    As is virtually axiomatic, a mortgage is not unsecured. Moreover, the discharge of debts did not include the mortgage from Suncoast.

21.    Within a matter of days of this event occurring, both Equifax and Experian received information from their public records vendor indicating that Ms. Snow's bankruptcy petition was no longer pending, and that Ms. Snow had received a discharge of debts.

22.    A reaffirmation of debt agreement is filed on the official form (Form 2400A/B), and the creditor must sign it—it is a bilateral agreement, not something a debtor can execute unilaterally.

23.    Suncoast was thus aware of the reaffirmation agreement.

24.    Suncoast reported to Experian and Equifax Ms. Snow's liability to pay her mortgage had been discharged through bankruptcy, even though this was clearly false. Suncoast reported to Equifax the "account status" was "included in bankruptcy."



---

[1] Obtained from Ms. Snow's September 22, 2025 Equifax Consumer Disclosure

25. Suncoast reported to Experian the status of the account was "discharged through bankruptcy chapter 7/never late," with no balance, payment history, or monthly payment reported.

26. When reporting information to nationwide CRAs like Equifax and Experian, data furnishers, including Suncoast, prepare reports using the Metro 2 language created and maintained by the Consumer Data Industry Association ("CDIA").

27. Metro 2 contains "compliance condition codes" ("CCCs") for data furnishers to notate accounts that are petitioned for bankruptcy, are included in a bankruptcy discharge, and/or reaffirmation of debt, and so on.

28. After receiving and signing Ms. Snow's reaffirmation of debt in November 2024, Suncoast should have reported a CCC code of "R," meaning "Reaffirmation of Debt," as part of its reporting to the CRAs, but it did not.

## Ms. Snow's Disputes of Accuracy

29. After reviewing her credit reports and learning the mortgage she had been paying on time, every month, since November 2024 was reported as discharged

---

[2] Obtained from Ms. Snow's July 23, 2025 Experian Consumer Disclosure

through bankruptcy, Ms. Snow submitted disputes to Equifax and Experian regarding the Suncoast mortgage tradeline on at least three different dates.

30.    In her disputes, Ms. Snow pointed out, correctly, that she had reaffirmed the mortgage and had been making on time payments every month.

31.    Rather than conduct any human-led investigation into the dispute, both Experian and Equifax utilized an automated system to send Suncoast an Automated Consumer Dispute Verification ("ACDV") request, asking it to investigate.

32.    The CRAs send the ACDVs to their furnishers of information via e-OSCAR, an online dispute resolution platform.

33.    When a furnisher responds to the ACDV via e-OSCAR, the person sending the response must electronically sign the response and confirm as follows:

> By submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

### Experian disputes

34.    On or about July 23, 2025, Experian received Ms. Snow's first dispute, stating the Suncoast mortgage had not been discharged in her Chapter 7 Bankruptcy and that she continued to make payments on the mortgage, as agreed.

35.    Ms. Snow's dispute was readily and objectively verifiable, as (1) Experian was already aware of Ms. Snow's bankruptcy and Experian's own credit file on Ms. Snow included a tradeline stating the case number, date, jurisdiction, and other relevant information, and (2) the question of if the mortgage had been reaffirmed or

not could be quickly and easily verified, as the agreement memorializing the reaffirmation of debt was public record as it was part of a bankruptcy proceeding.

36. Despite the fact Experian could have resolved the dispute on its own, Experian's automated system sent Suncoast an ACDV, asking Suncoast to conduct a reasonable investigation into the dispute.

37. Suncoast responded to the ACDV by indicating its reporting was accurate and Experian should continue to report the account as discharged in bankruptcy.

38. On or about August 18, 2025, Ms. Snow submitted a second dispute regarding the status of the Suncoast tradeline to Experian wherein she reiterated the account had not been discharged and she was continuing to pay the account.

39. This time, Suncoast responded significantly differently to the ACDV and updated its tradeline to reflect that the mortgage had been reaffirmed and updated its reporting and payment history.

40. However, Suncoast indicated that the "Date of status" of the account was September 2025 -- not November 2024.

41. The "Date of status" is the date the status of the account, i.e. "reaffirmation of debt," last changed.

42. In other words, Suncoast reported that Ms. Snow reaffirmed the mortgage in September 2025, nearly a year after she actually had.

43. Suncoast's reporting was not mere harmless typographical error – the more recent an adverse "date of status" is reported, the more adverse impact the

tradeline has when a credit score is computed by most commonly-used credit scores, including almost every version of FICO®.

44. The fact Suncoast was able to ascertain the current status of the account was "paid as agreed" and not "discharged in bankruptcy" in its second investigation – in which it had the exact same information as its first investigation – shows its first investigation was unreasonable. See, e.g., *Ponder v. Ocwen Loan Servicing, LLC*, 2018 WL 4474635 (N.D. Ga. July 30, 2018)

45. Suncoast's second investigation was also not reasonable as it concluded the mortgage had been reaffirmed, but in September 2025, despite Suncoast being fully aware the date was November 2024, and Suncoast had received monthly payments from Ms. Snow each month since November 2024.

46. Suncoast continues to report to Experian the "date of status" of the reaffirmation of debt was September 2025, and Experian continues to incorporate this information into Ms. Snow's credit file, as of the date of this filing.

47. Suncoast did not update its reporting to Experian to indicate this information was disputed by Ms. Snow.

### Equifax disputes

48. When Suncoast updated its reporting to Experian in or around August 2025, Suncoast also updated its reporting to Equifax.

49. However, Suncoast reported to Equifax that as of July 2025, that (1) the mortgage balance had been discharged in bankruptcy with respect to Ms. Snow's liability, and (2) there was a pending bankruptcy petition concerning the mortgage.

50.  Equifax's credit file disclosure shows for the month of July 2025, "Narrative Code" 220 (Bankruptcy Chapter 7) and 279 (Bankruptcy Petition) were reported by Suncoast.

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 08/25 | $164,179 | ¤ | ¤ | 08/04/2025 | ¤ | $178,400 | ¤ | 167, 127, 152 |
| 07/25 | ¤ | ¤ | ¤ | 07/16/2025 | ¤ | ¤ | ¤ | 220, 279, 127, 152 |
| 01/25 | ¤ | ¤ | ¤ | ¤ | ¤ | ¤ | ¤ | 167, 220, 280, 127 |
| 12/24 | ¤ | ¤ | ¤ | 12/05/2024 | ¤ | ¤ | ¤ | 220, 279, 127, 152 |
| 11/24 | ¤ | ¤ | ¤ | 11/02/2024 | ¤ | ¤ | ¤ | 220, 279, 127, 152 |
| 10/24 | ¤ | ¤ | ¤ | ¤ | ¤ | ¤ | ¤ | 220, 280, 127, 152 |
| 09/24 | $167,883 | $1,167 | $1,167 | 09/02/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 08/24 | $168,214 | $1,167 | $1,167 | 08/03/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 07/24 | $168,545 | $1,167 | $1,167 | 07/05/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 06/24 | $168,875 | $1,167 | $1,167 | 06/04/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 05/24 | $169,204 | $1,167 | $1,167 | 05/08/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 04/24 | $169,532 | $1,167 | $1,167 | 04/03/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 03/24 | $169,860 | $1,167 | $1,158 | 03/06/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 02/24 | $170,187 | $1,158 | $1,158 | 02/04/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 01/24 | $170,512 | $1,158 | $1,158 | 01/03/2024 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 12/23 | $170,837 | $1,158 | $1,158 | 12/05/2023 | ¤ | $178,400 | ¤ | 127, 152, 132 |
| 11/23 | $171,162 | $1,158 | $1,158 | 11/03/2023 | ¤ | $178,400 | | 127, 152, 132 |

| Narrative Code | Narrative Code Description |
|---|---|
| 167 | Consumer Disputes After Resolution |
| 127 | Real Estate Mortgage |
| 152 | Conventional Mortgage |
| 220 | Bankruptcy Chapter 7 |
| 279 | Bankruptcy Petition |
| 280 | Bankruptcy Discharged |
| 132 | Fixed Rate |

51.  Equifax was aware this information was, on its face, false, as Equifax's own credit file on Ms. Snow contained a tradeline indicating the case number, discharge date, jurisdiction, and other information about Ms. Snow's bankruptcy.

52.  Reasonable procedures designed to ensure maximum possible accuracy of reports sold would not allow for the incorporation of mortgage information which is expressly contradicted by public records – public records contained in Equifax's own credit file on Ms. Snow, at that.

53.  On or about November 4, 2025, Ms. Snow submitted a dispute to Equifax regarding the Suncoast mortgage tradeline, stating the status, payment history, and payment rating on the account was incorrect. Ms. Snow reiterated that no discharge

of debt concerning the mortgage ever occurred and that a reaffirmation of debt had been in place prior to her discharge.

54.    Ms. Snow's dispute was readily and objectively verifiable by Equifax, especially considering it already had detailed information about her bankruptcy in its own credit file on Ms. Snow.

55.    Instead of making its own investigation, Equifax, like Experian, simply sent Suncoast an ACDV form through e-OSCAR, asking Suncoast to conduct a reasonable investigation into the dispute.

56.    Suncoast responded to the ACDV by indicating its reported information was accurate and required no update, change, modification or deletion.

57.    As of the date of this filing, Equifax continues to report that in July 2025, the mortgage balance had been discharged in bankruptcy with respect to Ms. Snow's liability, and that there was a pending bankruptcy petition concerning the mortgage in July 2025, two objectively false and derogatory pieces of data.

58.    Suncoast did not update its reporting to indicate this information was disputed by Ms. Snow.

### Experian and Equifax Fail To Make Reasonable Investigations

59.    CRAs are required to conduct their own investigations into a dispute from a consumer. *See* 15 U.S.C. § 1681i(a)(1)(A).

60.    It is almost axiomatic that a reasonable investigation must consist of something more than parroting back information received from other sources.

61.     But, rather than conduct their own independent reinvestigations, Experian and Equifax, in response to the disputes received from Ms. Snow, relied exclusively on the dispute responses from Suncoast, blindly accepting the results and updating their reporting accordingly via a completely automated system, without any human intervention or review.

62.     Experian and Equifax determined that the electronic verification of disputed information by Suncoast – something requiring only a few clicks of a computer mouse – was somehow more persuasive evidence than anything proffered by Ms. Snow, even though Ms. Snow's disputes and version of events were far more probable than that of Suncoast's.

63.     Indeed, with respect to Experian, the fact Suncoast provided two wildly different responses to the same dispute should have put Experian on notice that further review of the reported information was required.

64.     Upon receipt of the ACDV responses, Experian and Equifax utilized an automated system which made rudimentary checks of tradeline data between what Suncoast reported and the data contained in Experian's own file on Ms. Snow, *e.g.*, her name, address, date of birth, and Social Security number.

65.     Of course, such automated processes will not do anything to correct false data reported as valid.

66.     For at least the last 40 years, courts in this district have recognized that a CRA cannot rely solely upon its data furnisher when the consumer provides proof questioning the reliability and accuracy of the data furnisher's representations. The

CRA must make some independent investigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985) ("Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher].").

67.    Experian and Equifax were obligated to do more than merely send ACDVs to Suncoast to investigate Ms. Snow's disputes because Ms. Snow had specifically highlighted the issue in her disputes, especially as the information required to evaluate her disputes was readily and objectively verifiable.

68.    Had Equifax and Experian conducted any meaningful investigation of their own, they would have determined the status of the Suncoast mortgage tradeline was reporting inaccurately and either suppress it or delete it from Ms. Snow's file.

69.    To that end, this is exactly what Trans Union did when Ms. Snow disputed the Suncoast tradeline to it – Trans Union deleted the inaccurate information within a matter of hours, on its own, and without the need to send an ACDV to Suncoast.

**Your Investigation Results**

INVESTIGATION RESULTS - DELETED: The disputed item(s) was removed from your credit report.

In response to your dispute, this item was DELETED from your credit report.

SUNCOAST CREDIT UNION
PO BOX 11904
TAMPA, FL 33680-1904

Page **13** of **25**

**Suncoast's Investigations Were Unreasonable**

70. As aforementioned, a reaffirmation of debt agreement is a bilateral contract executed by both the debtor and the creditor, and subsequently filed with the bankruptcy court.

71. Suncoast clearly had actual and constructive knowledge that the mortgage balance was legally reaffirmed and excluded from Ms. Snow's bankruptcy discharge.

72. By continuously verifying to the CRAs that the mortgage balance had been "included in a bankruptcy" and, later, that the balance had been reaffirmed in September 2025, Suncoast either entirely failed to review its own internal billing and legal records, or willfully ignored them.

73. A cursory review of the account history would reveal the active reaffirmation agreement, making Suncoast's verification of the inaccurate bankruptcy status patently unreasonable.

**Ms. Snow's Damages**

74. Ms. Snow was forced to procure legal counsel when Suncoast ignored her disputes about the mortgage account and continued to inaccurately report the mortgage account to Experian and Equifax, and when Experian and Equifax in turn failed to comply with their obligations pursuant to the FCRA.

75. Ms. Snow suffered from lost time from having to seek counsel in order to rectify the wrongly reported information, after attempting to resolve the problem herself through multiple disputes.

76.   The inaccurately reported Suncoast mortgage tradeline has appeared in credit reports supplied to Ms.  Snow's creditors, and potential creditors, and have adversely impacted Ms. Snow's ability to obtain new credit on favorable terms, robbing her of the fresh start her bankruptcy petition was supposed to provide her.

77.   As a direct and proximate result of the Defendants' negligent and/or willful failure to conduct a reasonable investigation and correct the inaccurate reporting, Ms. Snow has suffered, and continues to suffer, severe emotional distress, mental anguish, anxiety, and humiliation.

78.   The prolonged stress inflicted by the Defendants' non-compliance has manifested physically, causing Ms. Snow to experience general loss of life enjoyment.

79.   As the date of this filing, Experian continues to include a false "Date of status" of September 2025 concerning the mortgage. As such, Ms. Snow demands that Experian investigate and correct the "Date of status" to November 2024 upon service of this lawsuit within 30 days.

80.   As the date of this filing, Equifax continues to include false information concerning the Suncoast mortgage tradeline, specifically indicating that the debt was discharged in a bankruptcy petition and also that a pending bankruptcy petition occurred in July 2025.

81.   Ms. Snow demands that Equifax remove these notations from the Suncoast mortgage tradeline and to accurately report the account history.

82.   Ms. Snow has hired the undersigned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## SUNCOAST'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681s-2(b)

83. Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

84. Suncoast violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation into three disputes made by Ms. Snow to Equifax and Experian regarding the purported discharge of her mortgage balance in bankruptcy.

85. Any reasonable investigation would have determined that the mortgage balance was reaffirmed as of November 2024.

86. Suncoast's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Snow.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Suncoast for:

a. The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## SUNCOAST'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681s-2(b)
### (Pled in the Alternative to Count I)

87.    Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein and pled strictly in the alternative to Count I.

88.    Suncoast owed Ms. Snow a legal duty to conduct a reasonable investigation into Ms. Snow's dispute upon receiving notice from Experian.

89.    Suncoast violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation into three disputes made by Ms. Snow to Equifax and Experian regarding the purported discharge of her mortgage balance in bankruptcy.

90.    Any reasonable investigation would have determined that the mortgage balance was reaffirmed as of November 2024.

91.    Suncoast's conduct, action, and inaction was the result of negligence.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Suncoast for:

a.    Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT III
## EXPERIAN'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681e(b)

92.    Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

93.    Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of information in reports it sold regarding Ms. Snow, when it sold reports indicating her mortgage balance had been discharged in bankruptcy and/or that the "date of status" of the reaffirmation of debt was September 2025, despite possessing information to the contrary.

94.    Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm Ms. Snow.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Experian for:

a.    The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT IV**
**EXPERIAN'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**(Pled in the Alternative to Count III)**

95.    Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein and pled strictly in the alternative to Count III.

Page **18** of **25**

96.     Experian owed Ms. Snow a legal duty to follow reasonable procedures to assure maximum possible accuracy of information in reports it sold regarding Ms. Snow.

97.     Experian breached this duty when it sold reports indicating her mortgage balance had been discharged in bankruptcy and/or that the "date of status" of the reaffirmation of debt was September 2025, despite possessing information to the contrary, and therefore violated **15 U.S.C. § 1681e(b)**.

98.     Experian's breach of this duty amounts to negligence.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Experian for:

a.      Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

**COUNT V**
**EXPERIAN'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)**

99.     Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

100.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable reinvestigation regarding the disputed Suncoast tradeline upon receipt of Ms. Snow's disputes in July 2025 and August 2025. A reasonable investigation would

have concluded that the account was reaffirmed during her bankruptcy proceedings in November 2024 and was not discharged.

101. Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to investigate disputes, and its policies could reasonably be foreseen to cause harm Ms. Snow.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Experian for:

a.   The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT VI**
**EXPERIAN'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)**
**(Pled in the Alternative to Count V)**

102. Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein and strictly pled in the alternative to Count V.

103. Experian owed Ms. Snow a legal duty to conduct a reasonable investigation into Ms. Snow's dispute of the Suncoast tradeline.

104. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into Ms. Snow's dispute after receiving notice of her

disputes in July 2025 and August 2025, as any reasonable investigation would have determined that the Suncoast mortgage account was reaffirmed in Ms. Snow's Chapter 7 Bankruptcy in November 2024 and was not discharged.

105.    Experian's conduct, action, and inaction was the result of negligence.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Experian for:

a.    Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT VII**
**EQUIFAX'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681e(b)**

106.    Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

107.    Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of information in reports it sold regarding Ms. Snow, when it sold reports indicating the Suncoast mortgage was discharged during Ms. Snow's Chapter 7 Bankruptcy, despite possessing information to the contrary, and that she had a pending bankruptcy petition in July 2025, when she did not.

108.    Equifax's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with

maximum possible accuracy, and its policies could reasonably be foreseen to cause harm to Ms. Snow.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.   The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

### COUNT VIII
### EQUIFAX'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count VII)

109.   Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein and pled strictly in the alternative to Count VII.

110.   Equifax owed Ms. Snow a legal duty to follow reasonable procedures to assure maximum possible accuracy of information in reports it sold regarding Ms. Snow.

111.   Equifax breached this duty when it sold reports indicating the Suncoast mortgage was discharged in a Chapter 7 Bankruptcy when it was not, and that Ms. Snow had a pending bankruptcy petition in July 2025, when she did not, and therefore violated **15 U.S.C. § 1681e(b).**

112.   Equifax's conduct, action, and inaction was the result of negligence.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.   Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

**COUNT IX**
**EQUIFAX'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)**

113.   Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein.

114.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable reinvestigation regarding the disputed Suncoast mortgage tradeline upon receipt of Ms. Snow's dispute in November 2025. A reasonable investigation would have concluded that the account was reaffirmed during the Bankruptcy proceedings in November 2024 and was not discharged, and that Ms. Snow did not have a pending bankruptcy petition in July 2025.

115.   Equifax's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to investigate disputes, and its policies could reasonably be foreseen to cause harm Ms. Snow.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.   The greater of Ms. Snow's actual damages and statutory damages of $1,000.00 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT X
## EQUIFAX'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count IX)

116.   Ms. Snow adopts and incorporates paragraphs 1 – 82 as if fully stated herein and strictly pled in the alternative to Count IX.

117.   Equifax owed Ms. Snow a legal duty to conduct a reasonable investigation into Ms. Snow's dispute of the Suncoast tradeline.

118.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into Ms. Snow's dispute after receiving notice of the dispute in November 2025, as any reasonable investigation would have determined that the Suncoast mortgage was reaffirmed in Ms. Snow's Chapter 7 Bankruptcy and was not discharged, and that Ms. Snow did not have a pending bankruptcy petition in July 2025.

**WHEREFORE,** Ms. Snow respectfully requests this Honorable Court enter judgment against Equifax for:

a.   Ms. Snow's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

Page **24** of **25**

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**JURY TRIAL DEMANDED**

Ms. Snow hereby demands a trial by jury on all issues so triable.

Respectfully submitted on June 12, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *James Hubbard*
James Hubbard, Esq.
Florida Bar No.: 121405
3505 E Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230 (Ext: 406)
Fax: 855-500-0705
JHubbard@seraphlegal.com
*Counsel for Plaintiff*